May it please the Court, Your Honors, Robert Koch on behalf of the Governor of the State of Oregon. From an organizational standpoint, I'll largely be addressing the first question presented in this case, the collateral order doctrine. And Mr. Monson, on behalf of the Director of the Oregon Health Authority, will largely be addressing the statutory immunity question. At the outset, I do think, though, it's important to recognize that the two questions are in many ways intertwined. Central to the collateral order doctrine question is whether this Court views the district court's order, the denial of PrEP Act immunity from suit to a public official, whether the Court views that order as implicating a value of high order such that immediate appeal is warranted. And we think that it is. There's, first of all, all of the values that are implicated from the denial of qualified immunity. Magnifying that, you have the order here that goes to the heart of what the PrEP Act is and why it was enacted. You know, putting together the request for judicial notice in this case, which the Court granted earlier this week, it was chilling, frankly, to see what went into the development of a national strategy for a future pandemic. You had the White House call for a national response, saying that a pandemic would go in waves, infecting all sorts of all different communities, imperiling national infrastructure. In response, Congress enacted the PrEP Act, and in doing so, as part of the legislative history, Congress recognized that the rapid development and distribution of a vaccine would be critical to responding to a future pandemic. And then in 2018, the CDC and guidance said that prioritizing a future vaccine would also be critical because at the onset of a pandemic and after a vaccine has been developed, there's going to be a shortage of supply. And so where do you, how do you direct that vaccine supply in a way that keeps the economy going, keeps critical infrastructure going, and keeps national security intact? And so the district court's order here, denying that PrEP Act immunity for the governor and for the director of the Oregon Health Authority, directly implicates those interests. And denying immediate appeal would leave future public servants in the position of knowing that if they're making critical decisions in responding to a future pandemic, they run the risk if they make a decision that a future district court disagrees with, that they're going to have to get, that they might get hauled into court and have to go to trial and run the risk of a possible appeal. Even if their decision making falls squarely within the plaintext of the PrEP Act, squarely within the invocation of the PrEP Act by the HHS secretary, even if that decision complies with published guidance from the CDC and also published guidance from their state public health authority, if the district court disagrees with them, then they could be denied that immunity and absent immediate appeal. That chilling effect runs directly contrary to why Congress enacted the PrEP Act as part of marshaling, as to enable the marshaling of a whole of nation response to a future pandemic. And, you know, I think that, you know, the important public interest at issue here is really central. And I, you know, in terms of the other three factors that go into satisfying immediate appeal for the collateral order doctrine, you know, other courts are clear and uniform that the denial of an immunity from suit, particularly when it turns on a year, you know, it's the interpretation of the PrEP Act. Those denials of immunity from suit, they're final, they're conclusive, they're separate from the underlying merits. And so those are easily satisfied here. And that's why it really comes down to whether there is such an important value here. And for all of the reasons that went into the PrEP Act, both the White House's request for a national strategy, the guidance from the CDC, Congress enacting the statute, recognizing that vaccine prioritization would be required and would be so central to marshaling that response. So I agree with the case law saying that when a statute provides immunity from suit, that largely satisfies this collateral order doctrine. But can you respond specifically to plaintiff's argument that, you know, the state didn't argue it was immune from suit in at least initially and only maybe did so in reply? Yeah. So, Your Honor, we just, to us, that's a misreading of the record. In the motion to dismiss on the basis of PrEP Act immunity, we quoted the PrEP Act, specifically the statutory text that it provides immunity from suit and liability. We asked the district court to And that's how the district court analyzed it as well. The district court just came to a conclusion that we disagree with. And that's, and so it, that reading of the record misreads the plain text of the statute and our invocation of it. You know, and I think one of the other arguments that plaintiffs raise is that even though there is this immunity from suit and liability, it could still be liable. And to us, that's effectively arguing for a carveout of their 1983 claim from the broad immunity from suit provided by the plain text of the statute. And this court and the Supreme Court have made clear that 1983 is a statutory remedy. Congress can choose to alter or change that availability as it sees fit. And it, it did so here, both by saying that all claims for loss under federal and state law are immune, are preempted as because there's immunity. And also Congress created a remedial scheme. There are, there's a way that injured individuals can seek damages for harms that have occurred when there's willful misconduct. And plaintiffs just chose not to take that approach here. Unless this court has other questions at this time, I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, counsel. Thank you. Good morning, your honors. May it please the court, John Monson here on behalf of the appellant Patrick Allen, now former director of the Oregon Health Authority. I'd also like to reserve three minutes of my time if I'm able. Your honors, as Mr. Koch indicated, I'm going to focus my argument today on the substantive PrEP Act issue. That is whether the district court erred in denying PrEP Act immunity to the defendants related to their decision on how to prioritize vaccine early on in the pandemic. This is a 1983 lawsuit. Plaintiffs are suing a governor and the head of a public health agency for how they chose to allocate vaccine. It was in scarce supply in early 2021, shortly after the vaccine was released. We submit, your honors, this is exactly the type of claim that Congress intended to head off in the PrEP Act. Plaintiffs concede that Director Allen and the governor are covered persons under the PrEP Act. They concede that their claims are for covered losses under the PrEP Act. And they concede that the COVID-19 vaccine is a covered countermeasure under the act. So the sole question on this PrEP Act issue is whether a decision to prioritize one group over another and who's going to receive the vaccine later when vaccine supply is limited relates to the, quote, administration of the vaccine. That's the language in the PrEP Act. And we submit, your honor, that it does. The answer is clear from the PrEP Act itself, which states in the scope of immunity. Not only relates to the administration, relates to or resulting from the administration. Correct. Or caused by. The terms used are incredibly broad and purposely so. As even a district court acknowledged, the purpose of the PrEP Act was to provide sweeping immunity for these types of decisions. It sounds like an insurance coverage clause. I've read a lot of those, your honor, so I would agree. As I said, not only in the definition and the immunity from supervision, but there's also a separate provision in the PrEP Act that specifically talks about the scope of coverage. And there, the Congress went even one step further, said it covers not only losses related to the administration of a Also, and it has a litany of examples that I won't list, it's too long, but it relates to anything with a causal relationship to the distribution of a covered countermeasure. And I just don't know how you can look at this case and reach any other conclusion. But the claim against the governor and Director Allen were related to the distribution and administration of the vaccine. Now, the argument that plaintiffs have made is that this is really a claim based on inaction, the failure to allocate vaccines to inmates in custody. And the PrEP Act does... Pardon me, counsel. What do you find distribution in the text of the act? That's in subsection 6BA2B, your honor, the provision talking about scope. The plaintiffs have made this argument that it doesn't apply to inaction. That question has been repeatedly answered by the Department of Human Health and Services, which is really important here because the PrEP Act is entirely unique. It not only confers to the HHS secretary the authority to trigger the act, it confers to the secretary through its emergency declaration to define the scope of the act. So Congress defers to the declarations issued by the HHS secretary on how that immunity is going to be construed. And in December 2020, the HHS secretary issued a specific fourth amended declaration that discusses this very issue. And in that declaration, the HHS secretary clarified to the extent it needed clarification given on the statutory language, that a failure to give one group a covered countermeasure, which is a byproduct of having to give that scarce countermeasure to another group, still relates to the administration of a covered countermeasure. Is your argument that Congress validly delegated to the secretary how to write the statute? Not how to write the statute, of course not, your honor, but... Oh, how to read the statute, how to interpret the statute? Delegated to the HHS secretary to define the scope of immunity within the confines of the statutory language of the statute. Well, that's a very broad delegation of authority. It is, and it's... Is that constitutionally valid in the delegated powers cases? Well, your honor, that wasn't an argument that was raised by the plaintiffs in this case below or on appeal, so I... It hasn't been raised? I'm sorry? It has not been raised? It has not been raised, the argument... Then don't raise it now. No, I mean the other... Do you need that? I mean, if... I mean, your primary argument seems to be the language of the statute itself is broad enough to be interpreted as encompassing vaccine prioritization, so do you need the decision? Our position is you do not need to go that far. The reason why we are addressing it, your honor, is the district court did go that far. What the district court said is she focused on the language in that fourth amended declaration, and there was one sentence in that fourth amended declaration where the HHS secretary said something along the lines of, if, particularly if a decision is made in conformity with public health guidance, a decision not to give a covered countermeasure to one group, but the other one is covered, and the district court took that language and injected that phrase into the statute. The district court said the burden is on the defendants, the public health officials, to come forward and prove that their decision on how to allocate this vaccine was supported by public health guidance. Now, as Mr. Koch referred to, and as I think we've stated in the briefing, we think she made the wrong, you know, factual finding on that, because there was, in fact, published CDC guidance from the formal CDC advisory committee following the same exact allocation that we provided, that Oregon provided in the initial vaccine rollout. But even if it weren't, even if there was some piece of public health guidance that, for example, in this case, was found on the CDC's website that you could point to, the plaintiffs could point to, and said this is inconsistent, that is not a requirement in the statute. The phrase consistent with public health guidance appears nowhere, and purposely so, because Congress did not want district courts to step in and make public health decisions in the middle of a pandemic. Well, I guess, to be fair, in, I'm not going to remember all the sections, but in the discussion of the willful misconduct claim, since this PREP Act expressly says that acting consistently with the Secretary's guidance is, by definition, not willful misconduct, so suppose it is incorporating implicitly the idea that acting inconsistently with the Secretary's guidance could be willful misconduct, but then that just becomes a question out for trial. Well, and importantly, Your Honor, that's a very good point, because importantly, there are situations, we are not taking the position that there are no conceivable situations that could give rise to liability in the connection with the administration of a covered countermeasure. There are situations that Congress contemplated that was willful misconduct, serious bodily injury or death caused by willful misconduct, and what Congress said is that is an exclusive federal cause of action, it has to be filed in the District of Columbia before a three-judge panel, and there's a host of protections that the Congress imposed on that type of claim to ensure adequate gatekeeping so that this concern about inhibiting conduct in response to a pandemic is addressed. And with that, Your Honor, to the extent I have any time, I'll reserve it for rebuttal. Thank you. Thank you. Good morning, Your Honors, may it please the Court, Nadia Dahab for Plaintiffs in the Class, Appellees in this Court. Your Honors, in Plaintiffs' view, the PREP Act was enacted in 2005 for a very important, we don't disagree with the Governor and the Director, the importance of the PREP Act as it serves the national emergency response, but a very particular purpose, and that purpose, as Mr. Kotch just explained, was to further the rapid and efficient delivery of pandemic countermeasures like COVID-19 vaccines to members of the American public. That purpose is very specific, though, to make sure that vaccines are quickly and efficiently delivered, and so the PREP Act creates an immunity for those involved in the chain of delivery from formulation and design of the COVID-19 vaccine to manufacture, to distribution, to dispensing, to administration, to putting shots in the arms of Oregonians. So, Counsel, just to cut to the chase, so your position is the prioritization was not part of the important purpose of the? Yes, yes, and I don't mean to diminish the importance of prioritization, and particularly where there is a scarcity of vaccines, but I think the Court's obligation here is to read the PREP Act for what it says, and the PREP Act provides a host of activities for which it affords individuals immunity, and all of those activities are activities that are taken and undertaken in the context of delivering, designing, formulating, manufacturing, and actually giving people shots of the COVID-19 vaccine. Well, delivery is broader than actually putting shots in the arm. We would argue, Your Honor, that it's not, and I think that is clear from the statute, and I'd like to talk a little bit about that, but I don't know if our argument on this point is as clear in our brief as it could have been, but when you look at the immunity provision, that's sub A1, we agree that the provision on its face is quite broad, and it uses that relating to clause that on its face is also quite broad. The scope of immunity provision, lest the subsection A1 be read too broadly, cabins that and provides a very specific scope of immunity, and that's 247D60A1B, and it lists all of the activities that are immunized under the PREP Act. That includes, as defendants just explained, distribution, prescribing, dispensing, administration, licensing, and use. I was going to say, why wouldn't this be covered under administration? Administration is not defined in the statute. There is a definition in the Secretary's declaration, but I think you can look to other parts of the statute and gather what administration means, and if you look at some of the definitions in the statute, the definitions of covered person and program planner and qualified person, it makes clear that a covered person under the Act is a, quote, program planner, one who administers, one who supervises or administers the administration of COVID vaccines. Well, that's just using the same word. I know, I know. So it doesn't get us very far. And then you look, but then you look to the definition, for instance, of a qualified person, and a qualified person is one who's authorized to dispense, to prescribe, and to administer. Right, but you've conceded that the defendants are qualified covered persons. Yes? We, we have, we agreed in the district court that the, that the defendants here are covered persons. I think it is clear that Director Allen is a covered person. Because they administer. Because Director Allen supervises the, you know, in his capacity as director, he supervised OHA's administration programs. When they were, when they were putting shots in the arms of Oregonians, he was supervising those programs. I think under, if the court, under correct reading of the statute, it is less clear that Governor Brown is a covered person. And it, Like that argument before the district court that Governor Brown was not a covered person? We did not, Your Honor. Okay. We did not. I will say that I think this court's case law, you know, obligates the court to, you know, on a correct reading of the statute, not necessarily accept counsel's perhaps premature and potentially incorrect concessions on points like that. But I think when you look to qualified persons and program planners, it makes clear that, that qualified persons are healthcare professionals. And healthcare professionals, I don't think it's clear at all. Administer. So you're telling me it's clear is not helpful to me because it's not clear at all. Well, then let's go to the, the Secretary's declaration, because I do think that provides some clarity on the scope of administration. And I, and let me back up. I think what, what we view as clear is this, this chain of delivery that Congress intended to protect. And what Governor Brown did here in excluding wholesale, anyone who was living in a congregate setting where that congregate setting was a prison from a certain priority for vaccine distribution is not part and parcel to that chain of delivery that Congress is really seeking to protect for the purpose of getting vaccines from design to administration, to design. I don't understand why you say that's clear. If we're going through all of this elaboration in reference to other statutes, I don't understand why you say it's clear that it's, it doesn't fit within administration. In our view, it's clear because of the, because of the conduct that this PREP Act does protect. If you look at the list of, of conduct in the scope of immunity provision, these are all actions that are taken by pharmacists, by drug manufacturers, by people who are actually moving the drugs from the manufacturer to the state of Oregon to the health authority. It is not the governor. It's not exclusive though. The statute is very broad. It is very broad, but it, I mean, it is, it uses very particular words and the court has to construe the word administration consistently with those particular words. We also have to include related to, which is part of the. Which is not part of the scope of immunity provision. I think the scope of immunity provision cabins, you know, you know, relating. But we don't read the statute in isolation. We have to read the statute all together. Sure. And harmonize all parts of it. So it's, it's difficult for, to conceptualize of the argument that says, just look at this part of the statute and don't look at the rest of the statute. And, and we're, we're certainly not encouraging the court to do that. I think when you read the, the sub A1 and the scope of immunity provision together and also look at the other references to administering vaccines, which refer to healthcare professionals administering vaccines. Well, we have the definition here, a program planner and program planner means a state or local government, you know, who supervise or administer program with respect to the administration, dispensing, distribution, provision, or use of a countermeasure, including a person who established requirements, provided policy guidance, or supplied technical or scientific advice. And it seems, I mean, if you're talking about policy guidance with respect to a vaccine, it seems that would squarely fall into policy decisions about prioritization. I think that policy, I don't disagree that the, that the, it is worded broadly. I think we still believe that the program planner, the policy guidance is used in the context of, of, I'm sorry, I want to make sure I'm looking at the right provision here, of supervising or administering a program for countermeasures and programs for countermeasures are, you know, take place in facilities that administer countermeasures. And I think by programs for countermeasures, the Congress is thinking of the COVID clinic at the Oregon Convention Center, where vaccines are actually distributed because that's in the chain of delivery. It's not these high-level policy decisions that are separate from. The chain of delivery starts with the decision on how to deliver and to whom to deliver. So you cut the chain off by saying it starts when you're putting the vaccine into the arms and you're ignoring the, the first stages of the chain of delivery. They don't, the vaccine doesn't just get into the arm without some decisions being made as to when, where, and how that is to be done. So how can you divorce that part of the process from the actual delivery into the arm? Who gets vaccines when is not a question of the chain of delivery. Why not? The chain of delivery runs, at least as, as the scope of immunity provision suggests, from design and development to administration. From formulation and design by a pharm, yeah, to putting shots in people's arms. And along the way, somebody has to decide whose arms the shots are going to go into. Otherwise, how, how would it get delivered to the individual? Where vaccines are scarce, absolutely, that has to happen. But that, our position is that that, that's not what this scope of immunity provision is intended to protect. Is it your position that vaccines were not limited at the point when the, that's not your position. So someone had to determine priority. Correct. But that someone was not a covered person under the PREP Act and is not subject to immunity under the PREP Act. Who's not a covered person? The governor in making that decision. I think that's clarified by the Secretary's declaration. The Secretary includes a definition of administration and examples of what administering a vaccine and what claims. Is it the same declaration that says prioritization is included and covered under the PREP Act? It absolutely is. But, but the example in the declaration is consistent with how we read the statute. Council, examples are just that. Examples. They're not exclusive. We certainly agree with that. But the examples are illustrative of what the Secretary was thinking in terms of when this immunity applies. And the Secretary's example is that when a pharmacist or when a healthcare provider is at a COVID, is in a clinic and he's got, he or she has two, two potentially vulnerable people in front of them and a scarcity of vaccines, he has to make a decision. And if he makes a decision consistent with the public health guidance that's in place at that time, his failure to vaccinate one person because he has to choose the other is protected. That is very different. And that is consistent with our reading. On a larger scale, it's the same principle on a larger scale for the governor and the director of public health. I think it is, respectively, it is not. It is, I mean, the governor's decision here is a higher level policy decision. She is not making a, she was not making a decision based on established public health guidance about how to deliver vaccines that she had in her hands. She is making higher level decisions inconsistent with her own public health guidance, but we'll get to that in a second, about who to prioritize based on their presumptive, presumably based on their risk or based on their age and other related risk factors. But that's not the pharmacist in the clinic making a decision based on established guidance about what to do in a certain scenario. I want to turn to, for a moment, the district court's reasoning as to why this wasn't immunized, your claim wasn't precluded under the PREP Act and they were relying on, I think, the fact that your argument that the government was acting counter to public health guidance, but the PREP Act itself seems to anticipate a claim for willful misconduct based on a covered person's failure to follow public health guidance. So why isn't that actually a claim that is contemplated by the PREP Act and within the exclusive jurisdiction of the District Court of D.C.? Um, you know, I suppose the first answer, and this is never a position that I want to be in a council podium right now, is that Governor Brown, again, is not a covered person. I heard you say you didn't argue that in the District Court. I think, and I acknowledge that. But a correct reading of the statute here, I think, shows that Governor Brown is not a covered person. Okay, if we hold you to your first argument on that point, would you answer Judge Song's question? And Judge Song, can you... Sure, so the PREP Act seems to expressly contemplate a willful misconduct claim, and it says that, you know, compliance with public health guidance is, as a matter of law, not willful misconduct, but then implying failure to comply with public health guidance would be potentially at least willful misconduct under the PREP Act for which there is a claim, but that it must be brought in the exclusive jurisdiction of the District Court of D.C. I think after exhaustion of administrative remedies. So why, since the PREP Act itself seems to contemplate a claim based on failure to comply with public health guidance, why isn't this claim covered by the PREP Act? I think this claim in our... And counsel may read the claims a little bit differently. This claim is not, in our view, covered by the PREP Act, because this is not... If you read Plaintiff's Sixth Amendment complaint, which is in the record, this is a claim for... It's obviously a 1983 claim based on violations of the Eighth Amendment, and this, the defendant's failure to initially prioritize adults in custody for COVID-19 vaccines is alleged as one of several bases for her deliberate indifference. Right, but I'm saying the district court said, at least with respect to the prioritization decision, the reason why I'm finding that this claim was not precluded by the PREP Act is because, you know, taking the allegations as true, there was a failure or an act contrary to public health guidance. But then I look at the PREP Act, and it says, you know, if you fail or if you follow public health guidance, you are, by definition, as a matter of law, not willfully, not engaging in willful misconduct, implying that if you are acting contrary to public health guidance, you may be engaging in willful misconduct. There are other elements that have to be met. So why isn't then a claim based on a failure to follow public health guidance one that has to be brought under the PREP Act? Sure, and I think... So two things. I think, one, our claim is for willful misconduct, at least as that phrase is defined in the statute. I think it includes the disregard of a known and obvious risk that is, you know, deliberate indifference under 1983. I do think that, and I think this is what I was trying to say before, that those specific claims for willful misconduct contemplated by the PREP Act are sole claims for loss as a result of this specific failure or... administration or failure to administer a COVID-19 vaccine. And that's not... we have a much broader claim than that. And I think this is why, at least in my view, this is why it becomes clear that this is just not the sort of claim that the PREP Act was intended to apply to. We have a much broader claim that is not solely based on failure to prioritize someone in custody. But that portion of it. That portion. I assume... That portion, sure. ...your claims about, you know, failure to mask and failure... you know, all sorts of other things would not be, you know, precluded under the PREP Act, but the ones related specifically to the administration of the vaccine. And it's possible that it does. I don't think we could have, frankly... I don't think the federal rules would have allowed us to file... to separate out this claim and file this claim in D.C. and have the rest of our case ongoing in the District of Oregon. But maybe what you have to do. I mean, if you... we wouldn't have jurisdiction over that claim. This is not... these are not arguments the defendants have raised. They have never suggested that this case is improperly in the District of Oregon. Well, both of you are arguing we have to apply the law correctly, whether you argued it or not. Sure. So... Sure. I'm mindful that I've gone over my time, unless the Court has further questions. We'll request that the Court affirm the District Court's order. Thank you. Rebuttal number one. Your Honors, there was some discussion over the term administration in the text of the PrEP Act, which is very broad. And I just want to point out specifically where it appears, which is at 6D.A.2.B. and 6D.B.1. In that latter provision, the PrEP Act states that the Secretary can describe which activities are going to be covered for purposes of PrEP Act immunity. And in our briefing, we quote to the dictionary, the plain meaning of administration includes the management of something. And in the Secretary's declaration at RJ152, the declaration specifically states that it includes, quote, management and operation of countermeasure programs. I don't know how you can manage something if you don't include prioritizing a scarce resource, just as a logical matter. And at RJN29, the CDC in guidance specifically said that at the onset of a pandemic, when there's limited vaccine supply, you're going to have to figure out and prioritize who gets those doses for purposes of critical infrastructure. I think a second piece that I did want to address is that plaintiffs said that the governor excluded AIC's wholesale. That's just not true. The governor, the prioritization of the State of Oregon just didn't put them at the front of the line. They were eligible for the vaccine on the same terms as every other Oregonian. It was plaintiffs who wanted them moved ahead of elderly Oregonians, ahead of other medically fragile Oregonians, and the district court ultimately ordered that. The last piece that I want to talk about is just the chain of delivery discussion. And prioritization absolutely was part of the chain of delivery. Excuse me. Prioritization determined where those shots went. And so when the district court here ordered that the AIC should be vaccinated ahead of elderly Oregonians, those individual shots got redirected to the prisons so that plaintiffs could be vaccinated. That absolutely is part and parcel with the chain of delivery. So for those reasons, we ask that this court reverse. Thank you, Your Honors. Thank you. Rebuttal number two. One minute. Thank you, Your Honors. Just in my short minute, just a couple points in response to the argument. The other side has made this argument today that somehow PREP Act immunity should not apply to high-level policy decisions made by high-level public health officials. I would argue that that is an even more important purpose to PREP Act immunity because the decisions that are made at the level of a governor or the head of a public health authority have impacts on millions of people. And so if there was some carve-out for high-level policy decisions that would create potentially endless exposure to unlimited liability for anybody who is not in a higher-priority group on a vaccine, you're really opening up, the plaintiff's position would open up a Pandora's box for future litigation. If you can indulge me, I do have a question on just plaintiff's argument that we have to consider the PREP Act essentially as precluding a 1983 claim, and the Supreme Court has laid out some factors that we're supposed to consider to determine whether Congress actually intended to preclude a 1983 claim, a particular constitutional claim. So can you address what is your best evidence of Congress's intent here to preclude a 1983 claim? Sure, Your Honor. I would also point on that very point to this Court's opinion in Stilwell v. City of Williams. That was a Ninth Circuit opinion from 2016 that talked about the standards for assessing this very question. I would look to the language of the PREP Act itself. It says, a cover person shall be immune from suit and liability under federal and state law with respect to all claims. So your argument is this is an express preclusion. It is an express preclusion, and intentionally so. And if you look at the legislative history, which I know Mr. Koch went over that in some detail in his brief, it's clear that that was the intent here, to provide sweeping broad immunity over all claims, state and federal. Thank you, Your Honors. Thank you. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the Court. That completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. All rise. The Court for this session stands adjourned until tomorrow morning. For the students, let's take about a four- to five-minute quick break, bathroom, and then come back in here. Thank you.
judges: RAWLINSON, BEA, SUNG